**In re Vinod GEORGE, Debtor.**

**Phoebe Morse, United States Trustee, Plaintiff,**

v.

**Vinod George, Defendant.**

**Bankruptcy No. 03–15019–RS.**
**Adversary No. 03–1451–RS.**

United States Bankruptcy Court,
D. Massachusetts.

June 11, 2007.

Gary W. Cruickshank, Law Office of Gary W. Cruickshank, Boston, MA, for Debtor/Defendant.

Gary L. Donahue, U.S. Dept. of Justice, Office of U.S. Trustee, Boston, MA, for Plaintiff.

## MEMORANDUM OF DECISION

ROBERT SOMMA, Bankruptcy Judge.

### Introduction

Vinod George filed a Chapter 7 petition on June 12, 2003, thereby commencing the underlying bankruptcy case ("Debtor") ("Petition Date") ("Case"). On the Petition Date, he also filed the additionally required materials incident to the Case, including schedules of his property and debts and a statement of his financial affairs, and did so under oath ("Schedules") ("Statement") ("Case Papers"). On July 15, 2003, he attended the statutory Section 341 meeting at which he testified under oath in response to inquiries regarding the Case Papers by the Chapter 7 trustee appointed in the Case ("Case Trustee") ("Testimony"). The Case Papers, in part, were not accurate as of the Petition Date and thus were misleading as to some of the matters covered, particularly as to his most valuable asset, a 401(k) plan ("Plan"). The Testimony, too, was not accurate and was misleading in some respects, again particularly as to the Plan.

In this adversary proceeding, the United States Trustee ("UST") seeks a denial of the Debtor's discharge on account of these inaccurate and misleading representations and omissions in the Case Papers and the Testimony.

### I

### At Issue

At issue is whether (a) the Debtor concealed property before or after the Petition Date with the intent to hinder, delay or defraud a creditor or the Case Trustee and (b) whether the Debtor made a false oath concerning the Plan, and did so knowingly and fraudulently.

## II

### *Procedural Status*

The UST commenced this adversary proceeding by filing a complaint against the Debtor on October 30, 2003 ("Proceeding"). In her complaint, the UST seeks a denial of the Debtor's discharge, citing Section 727(a)(2)(A), Section 727(a)(2)(B) and Section 727(a)(4)(A) of the Bankruptcy Code.[1]

In November 2003, the UST moved for summary judgment in the Proceeding. I denied that motion in April 2005, finding genuine issues of material fact concerning the Debtor's specific intent under both Section 727(a)(2) and Section 727(a)(4)(A). I tried the matter on July 12, 2006. At trial, two witnesses testified: the Case Trustee and the Debtor. I admitted the deposition testimony of the Debtor's former lawyer, deceased at the time of trial. At the parties' joint request, I also admitted various documentary exhibits (including the Case Papers) and a tape of the Section 341 meeting of July 15, 2003.

Upon completion of the evidence and after closing argument, I granted the parties' request to submit post-trial briefs, and they did so. In deciding this matter, I considered the trial testimony, the deposition testimony, the admitted exhibits, the parties' written submissions (including their joint pre-trial statement), the arguments of counsel, the record of the Case, and applicable law.

For the reasons set forth below, the Court will dismiss the UST's complaint for denial of discharge.

## III

### *Background*

In early April 2003, concerned about his financial condition and job security, the Debtor hired a bankruptcy lawyer, Jeffrey C. Page. Their consultations extended through June 2003 and resulted in the commencement of the Case.

Throughout these consultations, central to the Debtor's concerns was the Plan, his principal asset with a then-market value of $55,210. He expressed to Page that, if he lost his job, he would need to withdraw the Plan funds for living expenses. Page advised him that such withdrawal prior to bankruptcy would make the Plan funds available to his creditors.

Page prepared the Case Papers from information furnished by the Debtor. The Debtor signed them on May 19, 2003 at Page's office. They were correct at that date as to his job status (he was still then employed) and the Plan (it was still then in effect and claimed as exempt). They were not correct in one respect—he failed to list (though he claims he disclosed to Page) his ownership of stock in a privately held technology company. They were incomplete and perhaps misleading in another respect: he truthfully listed himself as divorced but failed to disclose that he had remarried. At Page's recommendation, he agreed to defer the commencement of the Case until

---

1. Section 727(a)(2) reads in relevant part as follows: "The Court shall grant the debtor a discharge unless . . . the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . . concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition . . . or . . . (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. §§ 727(a)(2)(A) and (B).

Section 727(a)(4)(A) reads in relevant part as follows: "The Court shall grant the debtor a discharge unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

early June 2003, apparently to assure the inclusion of all pending credit card charges in the dischargeable debt basket. He understood from Page that, if he lost his job and/or liquidated his Plan account before commencement of the Case, amendments would be required to the Schedules and Statement to reflect those developments.

As it happened, before commencement of the Case, he lost his job and decided to withdraw the Plan funds. On May 26, 2003, he met with Page, informed him of these developments and confirmed the need for amendments to the Schedules and Statement. On May 27, 2003, he liquidated the Plan, receiving $38,210 (the Plan balance net of taxes). He deposited that amount in his checking account. On June 5, 2003, he informed Page of the Plan liquidation and again inquired about the required amendments. Page made no amendments, and, on June 12, 2003, Page filed the Case Papers in the form signed on May 19, 2003. As and when filed, on June 12, 2003, the Case Papers were deficient and misleading in the following respects: the Debtor had lost his job, he had liquidated the Plan, he had deposited the withdrawn Plan funds in his checking account, he owned technology stock, and he was remarried. None of this was disclosed in the Case Papers.[2]

On July 15, 2003, the Case Trustee conducted the Section 341 meeting. Three exchanges at that meeting are relevant to this matter. *First*, Page announced at the outset that amendments to the Case Papers would be required and forthcoming, noting the Debtor's job loss and the Plan

liquidation. *Second*, in response to the Case Trustee's inquiry on the topic, the Debtor identified *June* 27, 2003 (not *May* 27, 2003) as the Plan liquidation date. *Third*, the Case Trustee explained to Page and the Debtor *his* view of the Plan funds: if the Plan was liquidated and the Plan funds withdrawn pre-petition, then the Plan funds would be available to creditors; if the Plan was liquidated and the Plan funds withdrawn post-petition, then not. The Case Trustee then adjourned the meeting. Page never filed any amendments to the Case Papers.

In late December 2003, the Debtor dismissed Page and hired his current bankruptcy lawyer. On January 23, 2004, the Debtor filed the necessary amendments to the Case Papers to reflect matters as of the Petition Date: job loss, Plan liquidation, Plan funds deposit, stock ownership, and remarriage. Thereafter, the UST commenced the Proceeding.

## IV

### Discussion

*A. Framework*

■ Both the Section 727(a)(2) causes of action and the Section 727(a)(4)(A) cause of action require that I balance the Debtor's entitlement to a liberal construction of the discharge denial provisions of the Code and the Debtor's reciprocal obligation to be fully honest in all respects in his participation in the bankruptcy process, to insure that the bankruptcy benefits are not bestowed on an unworthy debtor. See *In*

---

2. The UST bases her discharge denial request on the Debtor's statements and omissions in the Case Papers and the Testimony regarding the Plan and the Plan funds. She appears to include the Debtor's misstatements regarding these other items—job status, stock ownership, marital status—as bearing on the Debtor's credibility but not themselves providing an independent basis for discharge denial. In assessing the Debtor's credibility, I have taken into account the Debtor's explanation regarding these misstatements. For discharge denial purposes, I limit my analysis to the UST's allegations regarding the Plan and the Plan funds and the evidence presented as to those allegations.

8

*re Tully*, 818 F.2d 106, 110–112 (1st Cir. 1987).

Here, the UST contends that (a) the portrayal of the Plan in the Case Papers is not only inaccurate and misleading but also constitutes a concealment of property of the Debtor and of the estate, a concealment intended to hinder, delay and defraud his creditors and the Case Trustee and (b) the misleading Case Papers and the Debtor's testimony at the Section 341 meeting regarding the Plan and the Plan funds constitute a knowingly and fraudulently false oath. Thus, in the UST's seasoned and vigilant view, the Debtor is not worthy of a discharge.

## B. Concealment

 Under Sections 727(a)(2)(A) and (B), the UST must prove, by a preponderance of the evidence, that the Debtor (a) concealed property of the Debtor within one year *before* the Case or (b) concealed property of the estate *after* the Case, and did so, in each instance, with intent to hinder, delay or defraud a creditor or the Case Trustee. See *In re Hayes*, 229 B.R. 253, 259 (1st Cir.BAP1999); *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Case Papers state that the Debtor has an asset consisting of the Plan with a value of $55,210 (and subject to an exemption claim) and another asset consisting of a checking account with funds on deposit in the amount of $1,440. While true on May 19, 2003, when signed by the Debtor, these statements were not true on June 12, 2003, the Petition Date. Based on these incorrect statements, the UST reasons to a conclusion of concealment as follows: (a) before June 12, 2003, the Plan had been liquidated and the Plan funds deposited in the Debtor's checking account; (b) before liquidation of the Plan, the Plan funds constituted an exempt asset while, after

liquidation of the Plan prior to the Case, the Plan funds deposited in the Debtor's checking account constituted a non-exempt asset; (c) the Debtor understood the significance of this difference; and (d) in his incorrect statements in the Case Papers as to the status of the Plan and the location of the Plan funds. as of the Petition Date, the Debtor concealed an asset otherwise available to creditors, namely, the withdrawn Plan funds on deposit in the checking account as of June 12, 2003.

The Debtor contends that he concealed nothing and that, even if his disclosure was inaccurate in some respects, he had no intent to hinder, delay or defraud any creditor or the Case Trustee. He argues that the UST's contention is mitigated, and ultimately rebutted, by the following: (a) the Case Papers were accurate when signed and, when filed, included disclosure of the Plan; (b) the Debtor made every effort to inform his lawyer of the Plan-related developments that are at the core of this matter and to ascertain whether (and to insure that) the Case Papers were amended to reflect such developments; (c) he expected Page to make the necessary Case Paper amendments and relied on him to do so; (d) the concealment of which the UST complains is less a concealment than a misstatement of the *status* of the Plan (liquidated not unliquidated) and of the *location* of the Plan funds (in the Debtor's checking account not in the Plan account), resulting from Page's failure to amend the Case Papers before Case commencement; and (e) reflecting their recognition of the importance of accurate disclosure regarding the Plan and the Plan funds, the Debtor and, more to the point, the Debtor's lawyer advised the Case Trustee at the Section 341 meeting of the need for amendments to the Case Papers, and did so at the very outset of that meeting. The Debtor insists that these facts are incon-

sistent with the dishonest non-disclosure that characterizes the true concealment warranting the discharge denial contemplated by the statute.

While Page is not here to explain himself, I find that he acted dilatorily if not irresponsibly in not promptly making the requisite amendments to the Case Papers and, more telling, in filing Case Papers he knew required amendment. That he knew he should have done so is reflected in his Section 341 announcement: "We're going to owe you some amended schedules . . . [The Debtor] is no longer employed. . . . [He] had a 401(k) plan which we had listed as exempt in the amount of $55,210. He needed to liquidate that in order to survive." [3] Page's pointed pronouncement that amendments on these key matters were necessary and would be forthcoming certainly reflects a lack of intent to hide from the Case Trustee the very developments that the UST complains were not disclosed. The timing of the preparation of the Case Papers coupled with the failure to make the Case Paper amendments reflects a carelessness and inattention on Page's part that would unfairly be attributed to the Debtor. The Debtor's obligation was disclosure; Page's obligation was amendment. The Debtor met his obligation; Page did not. [4]

Moreover, there is nothing in the record that warrants a finding that the Debtor authorized Page to file unamended and hence misleading Case Papers. Indeed, there is nothing to suggest that the Debtor even knew that Page had failed to make the requisite amendments by the Petition Date. In effect, the filing of the unamended Case Papers was not the *Debtor's* intentional act but rather was *Page's*.

Taking all these facts and circumstances into consideration, I find that there was no concealment by the Debtor notwithstanding the initially erroneous Case Papers and, even if the inaccuracies in the Case Papers as of the Petition Date somehow constituted a concealment, it was not effectuated by the Debtor with the requisite intent to hinder, delay or defraud any creditor or the Case Trustee.

Accordingly, I find that the UST has not met her burden of proof with respect to her Section 727(a)(2)(A) and Section 727(a)(2)(B) causes of action.

### C. *False Oath* [5]

Under Section 727(a)(4), the UST must prove, by a preponderance of the evidence, that the Debtor (a) knowingly and fraudulently (b) made a false oath (c) relating to a material fact in connection with the Case. See *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987); *In re Varrasso*, 37 F.3d 760, 764 (1st Cir.1994).

The Debtor's ownership of the Plan and its status on the Petition Date are clearly material facts incident to the Case. See *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). Here, the question is whether the Debtor knowingly and fraudulently made a

---

3. I am mindful that the testimony of Page and the Debtor differ on many points including as to when the Debtor informed Page of the Plan liquidation. I have had no opportunity to assess Page's credibility but I have assessed that of the Debtor and I find his testimony credible.

4. As noted, Page never filed any amendments. Rather, the Debtor's successor counsel did so in January 2004.

5. The UST appears to argue that the filing of the Case Papers with the noted inaccuracies constitutes a false oath knowingly and fraudulently made. For the reasons that I find no concealment with an intent to hinder, delay and defraud in respect of the Case Papers, I also find no false oath knowingly and fraudulently made in respect of the Case Papers.

false oath regarding the Plan in the Testimony.

■ At the Section 341 meeting, the Case Trustee and the Debtor had two exchanges that bear upon the UST's request for discharge denial under Section 727(a)(4).

*First,* the Trustee contends that the Debtor falsely answered the Case Trustee's question regarding the Plan liquidation date. The transcript of the relevant testimony reads as follows:

"Q: When did you put in the paperwork to cash out the 401(k) plan?

A: The 27th.

Q: Of June?

A: Yeah."

Of course, on its face, this response by the Debtor is a clear falsehood—the Plan was liquidated on May 27, 2003 not June 27, 2003, and the Debtor knew the timing of Plan liquidation and the significance of that timing.

I have listened to the tape of the Section 341 meeting, which plays out somewhat differently than the stark falsehood on the printed page. Having done so, I accept the Debtor's explanation that he misspoke in the midst of a rapid exchange in an environment foreign to him where he was confused, stressed and distracted (namely, during that phase of the bankruptcy process comprising the Section 341 meeting, a public event wherein debtors confront, perhaps for the first time, their financial failure, the consequences of that failure and the public nature of the process). That is to say, while his reply was clearly incorrect, I find that it was not intentionally false and was not made with an intent to hinder, delay or defraud. I base this finding both on the Debtor's credibility and demeanor at trial as well as the specific disclosure at the outset of the Section 341

meeting of the need for amendments relating to the Plan. It is not reasonable to conclude that the Debtor intended to mislead by a deliberate misstatement regarding a topic he knew was to be the subject of further disclosure.

*Second,* the UST contends that the Debtor sat silently while the Case Trustee explained to him the different treatment of Plan funds withdrawn before and after Case commencement. The UST's position appears to be that the Debtor should have informed the Case Trustee then and there of the pre-petition Plan liquidation and, in not doing so, in effect made a false oath—that is to say, permitted the Case Trustee to remain in the dark when the Debtor could have and should have provided illumination. The exchange reads as follows:

"Q: I don't actually have any other questions for you. I suppose I shouldn't say this, but it seems to me when you filed your petition on June 12th, if the money was in the 401(k) plan at that point, that's the key point ... If it was in the 401(k) when you filed, I don't think it's part of your estate, and I don't think I can do anything about it.

Page: I was careful to make sure it was still in the 401(k) at that point.

Q: ... if it's a 401(k) plan, it is not part of the estate, even if you left that job and you have right to get that money, it is still not part of the estate."

As reflected in the transcript, the Case Trustee did not pose any specific question to the Debtor. Rather, he indicated that his examination was completed. Moreover, *Page,* not the Debtor, chose to respond to the Case Trustee's explanation of his views on 401(k) plans and their treatment under bankruptcy law. It is reasonable to conclude that, as he testified, the Debtor chose not to speak because (a) no question was asked of him and (b) Page

spoke on his behalf. The Debtor's silence may have contributed to a false impression on the Case Trustee's part regarding the Plan liquidation date. However, even if it did so, I find that the Debtor's silence was not occasioned by an intent to mislead. Once again, I base this finding on the Debtor's credibility and demeanor at trial and Page's alert to the Case Trustee of the need for amendments relating to the Plan. It is not reasonable to conclude that the Debtor intended to mislead by his silence regarding a topic (a) on which his lawyer had responded and (b) which he knew was to be the subject of further disclosure.

Taking all these facts and circumstances into consideration, I find there was no false oath by the Debtor in the Testimony notwithstanding his incorrect statement and his silence and, in any case, neither that statement nor that silence was made knowingly and fraudulently.

Accordingly, I find that the UST has not met her burden of proof with respect to her Section 727(a)(4)(A) cause of action.

## V

### Conclusion

For the reasons stated above, judgment shall enter dismissing the complaint for denial of discharge.